## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| YOLANDA MCCLOUD and DONALD HARPER, Individually and for Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENSERV, INC. and ENERGY SERVICES GROUP INTERNATIONAL, INC. d/b/a BCP ENGINEERS AND CONSULTANTS, <br> Defendants. | Case No. 3:22-cv-58 <br><br> Jury Trial Demanded <br><br> Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Enserv, Inc. (Enserv) and Energy Services Group International, Inc. d/b/a BCP Engineers and Consultants (BCP) (collectively, "Defendants") misclassified Yolanda McCloud (McCloud) and Donald Harper, Jr. (Harper) (collectively, "Plaintiffs") and other workers like them (Putative Class Members) as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").

2. Defendants cannot meet the requirements for any relevant exemption because Defendants did not pay them on a "salary basis."

3. Instead, Defendants created a ruse to give the appearance of compliance by claiming to guarantee Plaintiffs and the Putative Class Members a token salary (say, $500 a week) while paying them a substantial hourly rate (say, $60/hr) for every approved hour worked up to 40 in a workweek.

4. In other words, 82.76% of their pay for a 40-hour workweek was dependent on the number of hours they worked.

5. The FLSA's "salary basis" test does not permit this type of "charade." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 294 (5th Cir. 2021) (citing 69 Fed. Reg. 22,184 (2004)).

6. An employee is not paid on a salary basis if he earns "$1,500 or more" on an hourly basis but is "guaranteed only the minimum required $455" because "this effectively allow[s] the employer to dock the employee for partial day absences." *Id.*

7. Defendants' purported salary guarantee was not reasonably related to what Plaintiffs and the Putative Class members actually earned based on the hours they worked. 29 C.F.R. § 541.604(b).

8. Defendants would routinely deduct from Plaintiffs' and the Putative Class Members' pay using incremental or partial day deductions.

9. Defendants' improper deductions also violate the salary basis test.

10. In short, Defendants' pay plan fails the salary basis test.

11. Because the salary basis test is a prerequisite to any potentially applicable exemption (administrative, executive, professional, or highly compensated) to the FLSA's overtime requirements, Plaintiffs and Putative Class Members are non-exempt employees who are entitled to overtime for every hour above 40 worked in a week.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case raises a federal question under 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

14. Defendants' employment contracts require Plaintiffs sue in this District and Division.

15. Defendants conduct substantial business in this District and Division.

## PARTIES

16. Plaintiff McCloud started working for Defendants in August of 2017.

17. McCoud still works for Defendants.

18. Defendants classified McCloud as a W2 employee.

19. McCloud's consent to join this lawsuit is attached as Exhibit 1.

20. Plaintiff Harper has worked for Defendants since May of 2020.

21. Defendants classified Harper as a W2 employee.

22. Harper's consent to join this lawsuit is attached as Exhibit 2.

23. Defendants treated Plaintiffs as hourly employees.

24. Defendants paid Plaintiffs according to the same illegal pay plan.

25. Both Enserv and BCP's company names were on Plaintiffs' pay stubs.

26. Enserv and BCP are related entities.

27. Defendants jointly controlled where the Plaintiffs were staffed.

28. Defendants jointly controlled Plaintiffs' pay.

29. While Plaintiffs offer letters have changed, at first their purported "salary" was minimal.

30. Plaintiffs would not have worked for Defendants if their actual salary was as listed on their offer letters for each week they worked for Defendants.

31. Instead, Plaintiffs relied on their hourly pay.

32. Upon information and belief, Defendants paid hundreds of workers with their illegal pay practice.

33. The workers impacted by Defendants' illegal pay scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

34. The class Plaintiffs seek to represent is properly defined as:

**All power plant workers who Enserv and BCP paid at less than time and a half for hours worked over 40 in a workweek (Putative Class Members).**

35. In 2013, BCP was purchased by ESGI.

36. ESGI is the parent company of both BCP and Enserv.

37. Although BCP was sued for its illegal pay practice in 2018, *Dunn v. Energy Services Group International, Inc.*, No. 2:18-cv-13349, ECF No. 1 (E.D. La. Dec. 11, 2018), it has not corrected its practices.

38. ESGI d/b/a BCP is headquartered in Toano, Virginia.

39. Enserv is headquartered in Toano, Virginia.

40. Enserv can be served through its registered agent Mark Doughty at 3601 La Grange Pkwy, Toano, Virginia, 23168 or wherever he can be found.

41. ESGI d/b/a BCP can be served through its registered agent, Thomas W. Gillman at 3601 La Grange Pkwy, Toano, Virginia, 23168 or wherever he can be found.

## COVERAGE UNDER THE FLSA

42. At all relevant times, BCP and Enserv were employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

43. At all relevant times, BCP and Enserv were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

44. At all relevant times, BCP and Enserv were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment—that have been moved in or produced for commerce.

45. At all relevant times, BCP and Enserv had an annual gross volume of sales made in excess of $1,000,000.

46. At all relevant times, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

**FACTS**

47. BCP and Enserv staff workers to the energy and industrial manufacturing sectors across the United States.

48. To provide their services, Defendants hire employees, like Plaintiffs and the Putative Class Members, to staff to their clients.

49. To generate their revenue, Defendants bill clients for the time worked by employees like the Plaintiffs and Putative Class Members. *Id.*

50. While Defendants staff employees like Plaintiffs and the Putative Class Members out to clients, Defendants maintain an employment relationship with Plaintiffs and the Putative Class Members.

51. Defendants are responsible for any wage and hour violations it committed with respect to Plaintiffs and Putative Class Members.

52. Defendants issue the paychecks and other forms of compensation and reimbursements to the Plaintiffs and the Putative Class Members.

53. Defendants are responsible for the employer's share of taxes and tax obligations for the Plaintiffs and the Putative Class Members.

54. For example, Defendants issue the yearly W2 IRS form to Plaintiffs and the Putative Class Members.

55. Defendants employ Plaintiffs and the Putative Class Members as full-time employees.

56. Defendants provide Plaintiffs and the Putative Class Members with a handbook, which describes their employment and pay policies.

57. Defendants provide Plaintiffs and the Putative Class Members with an offer letter, which describes the pay policies applicable to the employee.

58. Defendants pay and paid Plaintiffs and the Putative Class Members according to the same pay plan.

59. Defendants' pay plan involved using a small weekly "salary" per week and significant hourly rates for hours worked up to and above 40 hours in a week.

60. For example, McCloud's initial alleged "salary" was $1,000 a week and her hourly rates were $60+ an hour.

61. Defendants do not guarantee Plaintiffs or the Putative Class Members a set number of hours each week.

62. Defendants do not guarantee that Plaintiffs and the Putative Class Members would receive their regular weekly amount of pay if a full week of work was performed (40 hours of work in a week).

63. Defendants routinely deduct from Plaintiffs' and the Putative Class Members' pay using incremental or partial day deductions.

64. Defendants' deductions are improper, which result in a violation of the salary basis test.

65. Defendants' hourly compensation grossly exceeded the flat amount of pay per week it provided the Plaintiffs and Putative Class Members.

66. Defendants' additional hourly compensation is not reasonably related to the guaranteed flat amount of pay per week.

67. As a result, Defendants cannot satisfy their burden to meet the salary basis test.

68. Because the salary basis test is a prerequisite to any white-collar exemption (administrative, executive, professional, or highly compensated) of the FLSA's overtime requirements, Defendants cannot satisfy their burden to apply potentially applicable overtime exemption.

69. Plaintiffs and the Putative Class Members regularly worked in excess of 40 hours a week and did not receive one-and-a-half times their regular rate of pay for all hours worked over 40 in a week.

70. As a result of Defendants' misclassification, Plaintiffs and the Putative Class Members are due one-and-a-half times their regular rate of pay for all hours worked over 40 in a week.

71. Enserv and BCP are both subsidiaries of ESGI.

**Facts Specific to Plaintiffs**

72. Plaintiffs were employees of Defendants.

73. Defendants hired McCloud in August of 2018.

74. Defendants hired Harper in May of 2020.

75. Plaintiffs have offer letters from Enserv and BCP.

76. Plaintiffs have pay checks from Enserv and BCP.

77. Defendants assigned McCloud to work in the Southern Nuclear plant located in Georgia.

78. Defendants assigned Harper to work at the Southern Nuclear plant in Georgia.

79. Defendants employed McCloud as a Site Completions Manager.

80. McCloud would create procedures and construction plans for the Southern Nuclear plant.

81. Defendants employed Harper as a Cyber Security Team Leader.

82. Harper safeguarded information and system assets by identifying potential security problems.

83. Defendants sent Plaintiffs an arbitration agreement to sign in order to waive their rights to participate in a collective action.

84. Plaintiffs were paid pursuant to Defendants' "salary plus hourly" pay scheme.

85. Defendants did not pay Plaintiffs time and a half for their overtime hours.

86. Plaintiffs' additional hourly compensation was substantial in each week.

87. The additional hourly compensation far exceeded any "base weekly salary."

88. McCloud would not have worked for Defendants for just a $1,000 weekly "salary."

89. Plaintiffs were not guaranteed pay that was "roughly equivalent" to what they "usually earned" for even for a 40-hour work week.

90. Defendants permitted partial day deductions to Plaintiffs' alleged "salary."

91. Defendants permitted a deduction from a 40-hour week.

92. The bulk of Defendants' compensation to Plaintiffs came from hourly wages.

93. Plaintiffs relied on these hourly wages.

94. While the rates of pay Plaintiffs received changed slightly during their employment with Defendants, the structure of their pay remained the same—a token weekly "salary" and high hourly rates for all hours worked.

95. Plaintiffs reported the hours they worked to Defendants on a regular basis.

96. Defendants recorded and tracked the hours worked by Plaintiffs.

97. Plaintiffs were not guaranteed a salary reasonably related to a full week's work.

98. Plaintiffs were not paid on a salary basis in accordance with the FLSA.

99. If Plaintiffs worked fewer than 40 hours in a week, Defendants paid them for only the hours worked.

100. But Plaintiffs normally worked over 40 hours a week.

101. In fact, Plaintiffs customarily worked 40 to 60 hours a week.

102. The number of hours worked by Plaintiffs was required by Defendants.

103. To comply with the FLSA's "reasonable relationship" test, the ratio of "actual earnings to salary" generally cannot exceed 1.5.

104. In most, if not all workweeks, Plaintiffs exceed the 1.5 ratio.

105. When Plaintiffs worked overtime, they would earn over 5 times their alleged salary.

106. Defendants revised their offer letters in 2020.

107. The new offer letters essentially paid Plaintiffs straight time for overtime.

108. Pursuant to the new offer letters, Plaintiffs did not receive a guaranteed salary.

109. Pursuant to the new offer letters, the amount that the Plaintiffs earned was not reasonably related to the amount of their purported "salary."

110. Regardless of the offer letter, Defendants made deductions from Plaintiffs' compensation.

**Defendants' Policies**

111. Defendants' offer letters contain their compensation policies.

112. Under Defendants' policies, Plaintiffs and the Putative Class Members did not receive a guaranteed salary.

113. Under Defendants' policies, Plaintiffs and the Putative Class Members did not receive time and a half overtime.

114. Defendants' compensation policies are applicable to Plaintiffs and Putative Class Members.

**Defendants Willfully Violated, or Reckless Disregarded, the FLSA**

115. Defendants knew about the FLSA and its requirements.

116. Defendants employed individuals who were tasked with FLSA compliance and classification.

117. Defendants knew they had to meet the salary basis test to take advantage of any exemptions for white-collar employees.

118. BPC is related to ESGI. *See* https://bcpengineers.com/staffing/ (Last visited January 31, 2022) ("Because of the long history of BCP supporting the nuclear industry, there are over 450 engineers, project manager, and technical resources that have proven their value while working for BCP and ESGI.")

119. As alleged, infra at ¶¶ 37, 38, ESGI and BCP were sued for failing to pay time and a half to staffed employees in 2018. *See Dunn*, C.A. 2:18-cv-13349, ECF No. 1.

120. BCP settled the nearly identical litigation in *Dunn. Id.*, ECF No. 36.

121. ESGI (BCP and Enserv's parent corporation) has been served with subpoenas to produce records in other federal collective action with similar allegations. *See Smith v. Guidant Global, Inc.*, No. 2:2019-cv-12318 (E.D. Mi. 2019); *Hall v. Dominion Energy, Inc., et al.*, No. 3:18-cv-00321 (E.D. Va. 2018).

122. Defendants knew from prior litigation history to investigate whether they were complying with the salary basis test.

123. Defendants heard from their employees that they needed to investigate (and correct) the pay plan it imposed on Plaintiffs and the Putative Class Members.

124. Defendants knew the salary basis test could be failed.

125. Defendants attempted to dodge the salary basis test by setting up their token salary plus hourly pay system.

126. Defendants knew about the Department of Labor's 2018 Opinion Letter requiring the salary basis test and reasonable relationship test be satisfied for "salaried" employees who receive additional hourly compensation.[1]

127. Defendants disregarded this knowledge and maintained an illegal "salary plus hourly" compensation scheme.

128. Defendants' pay plan violates the FLSA.

129. Defendants knew, or showed reckless disregard for whether, their illegal pay plan violated the FLSA.

130. Defendants' failure to pay overtime was, and is, a willful violation of the FLSA.

### FLSA COLLECTIVE ACTION ALLEGATIONS

131. Defendants' illegal pay policy extends beyond Plaintiffs.

132. Based on their experiences and tenure with Defendants, Plaintiffs know Defendants' illegal practices were imposed on the Putative Class Members.

133. Plaintiffs believe the Putative Class Members exceed 300.

134. The Putative Class Members were all paid less than time and a half when they worked in excess of 40 hours per week.

135. The Putative Class Members were not paid a guaranteed salary in accordance with the FLSA.

136. If the Putative Class Members worked under 40 hours, they were only paid for the hours they worked.

137. Numerous individuals were victimized by this pattern, practice, and policy that is a willful violation of the FLSA.

---

[1] See https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2018_11_08_25_FLSA.pdf (Last visited November 17, 2021).

11

138. Defendants' failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Putative Class Members.

139. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

140. The specific job titles or precise job locations of the various Putative Class Members does not prevent collective treatment.

141. Any differences in job duties do not detract from the fact that these workers were entitled to overtime pay.

142. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

143. A collective action was recently granted against Defendants' parent company, ESGI, for the exact same collective action definition. *Brown v. Energy Servs. Grp. Int'l, Inc.*, No. 3:21-CV-611, 2021 WL 5889707, at *4 (E.D. Va. Dec. 13, 2021) (Payne, J.).

## CAUSE OF ACTION

144. By failing to pay Plaintiffs and the Putative Class Members overtime at one-and-one-half times their regular rates, Defendants violated the FLSA's overtime provisions.

145. Defendants owe Plaintiffs and Putative Class Members the difference between the rate actually paid and the proper overtime rate.

146. Because Defendants knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Defendants owe these wages for at least the past three years.

147. Defendants are liable to Plaintiffs and the Putative Class Member for an amount equal to all unpaid overtime wages as liquidated damages.

148. Plaintiffs and those similarly situated to them are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

149. Plaintiffs demand a trial by jury.

## PRAYER

150. Plaintiffs pray for relief as follows:

   a. An Order designating this case as a collective action and authorizing notice to all Putative Class Members informing them of their right to join this action by filing a written consent pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding **Defendants** liable to Plaintiffs and the Putative Class Members for their unpaid overtime as well as liquidated damages in an amount equal to their unpaid overtime;

   c. For an Order awarding attorneys' fees, expenses, costs, and pre- and post-judgment interest; and

   d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

YOLANDA MCCLOUD and DONALD HARPER,
Individually and for Others Similarly Situated

By: */s/ Zev H. Antell*
    Harris D. Butler (VSB No. 26483)
    Zev H. Antell (VSB No. 74634)
    **BUTLER CURWOOD, PLC**
    140 Virginia Street, Suite 302
    Richmond, Virginia 23219
    (804) 648-4848 – Telephone
    (804) 237-0413 - Facsimile
    Email:   harris@butlercurwood.com
                 zev@butlercurwood.com


    Michael A. Josephson
    TX Bar No. 24014780
    (*Pro Hac Vice to be filed*)
    Andrew W. Dunlap
    TX Bar No. 24078444
    (*Pro Hac Vice to be filed*)
    Richard M. Schreiber
    TX Bar No. 24056278
    (*Pro Hac Vice to be filed*)
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    Email:    mjosephson@mybackwages.com
                  adunlap@mybackwages.com
                  rschreiber@mybackwages.com

    Richard J. (Rex) Burch
    TX Bar No. 24001807
    (*pro hac vice forthcoming*)
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    Email:    rburch@brucknerburch.com

        **ATTORNEYS IN CHARGE FOR PLAINTIFFS**